

# In the
# Missouri Court of Appeals
## Western District

| | |
|---|---|
| IN THE INTEREST OF: K.R.T., A.J.T. AND K.L.T.; <br><br> MISSOURI DEPARTMENT OF SOCIAL SERVICES, CHILDREN'S DIVISION, <br><br>     Respondent, <br><br> v. <br><br> K.T., <br><br>     Appellant. | WD79613 Consolidated with WD79614 and WD79615 <br><br> OPINION FILED: <br> December 27, 2016 |

### Appeal from the Circuit Court of Jackson County, Missouri
The Honorable John M. Torrence, Judge

Before Division One: Thomas H. Newton, Presiding Judge, Cynthia L. Martin, Judge
and Edward R. Ardini, Jr., Judge

K.T. ("Father") appeals from the judgments terminating his parental rights to K.R.T., A.J.T., and K.L.T. (collectively "Children"). Father argues that the trial court was without jurisdiction to enter the judgments terminating his parental rights because the trial court did not have lawful jurisdiction over the Children in the underlying juvenile cases which preceded the termination of parental rights proceedings. Because Father's point on

appeal constitutes an impermissible collateral attack on the judgments in the underlying juvenile cases, we affirm.

## Factual and Procedural History[1]

Father is the legal father of K.R.T., born March 5, 2008; A.J.T., born April 12, 2009; and K.L.T., born December 7, 2006. The Children were placed in the temporary legal custody of the Missouri Department of Social Services, Jackson County Children's Division ("Children's Division") on July 20, 2009, after A.J.G. ("Mother") took K.R.T. and K.L.T. to the hospital because she suspected that one or both had been sexually abused. On September 15, 2009, the Children were adjudicated by the trial court to have been abused or neglected in case numbers 0916-JU000992, 0916-JU000995, and 0916-JU000996.

From September 15, 2009, to October 14, 2009, the Children were in the Children's Division's custody. On October 14, 2009, the Children were placed in the custody of their parental grandmother but remained under the supervision of the Children's Division. The Children were returned to the custody of the Children's Division on June 17, 2010, but remained placed with their parental grandmother. On September 3, 2010, the Children were placed in the custody of Father, but remained under the Children's Division's supervision. On August 17, 2011, the Children were ordered placed back into the custody of the Children's Division after Father was alleged to have improperly allowed his girlfriend and her children to reside with him, to have moved out of the county with the

---

[1]On an appeal from a judgment terminating parental rights, we view the facts in the light most favorable to the judgment. *In the Interest of A.C.G.*, No. WD79274, 2016 WL 4752531, at *1 n.1 (Mo. App. W.D. Sept. 13, 2016).

2

Children, and to have failed to maintain contact with the Children's Division. The Children's Division thereafter also alleged that Father had attempted to steal fuel from parked school buses with the Children present.

At a subsequent hearing, the Children's Division amended its allegations against Father to rely solely on the fact that Father had been charged with stealing fuel from parked buses in the presence of the Children. On April 12, 2012, the trial court entered a judgment awarding custody of the Children to the Children's Division. The Children remained in foster care where they had been placed since their removal from Father's custody on August 17, 2011.

The Children's Division filed petitions to terminate Father's parental rights on May 21, 2015, in case numbers 1516-JU000541, 1516-JU000542, and 1516-JU000543.[2] The petitions alleged Father's parental rights should be terminated because: (i) the Children had been abandoned by Father for a period of six months or longer;[3] (ii) the Children had been abused or neglected[4] because, on September 15, 2009, Father stipulated that the children were without proper custody, support, or care for their well-being in that he neglected and failed to protect the Children; (iii) that the Children had been under the jurisdiction of the juvenile court for more than one year, and the conditions which led to the assumption of jurisdiction still persist, or conditions of a potentially harmful nature continue to exist, and there is little likelihood that those conditions would be remedied so

_____

[2]Mother's parental rights were terminated voluntarily in case numbers 1416-JU000873, 1416-JU000874, and 1416-JU000875.
[3]Section 211.447.5(1). All statutory references are to RSMo 2000 as supplemented unless otherwise provided.
[4]Section 211.447.5(2).

3

that the Children could return to Father or the continuation of the parent-child relationship greatly diminishes the Children's prospects for integration into a permanent and stable home;[5] and (iv) that Father is unfit to be a party to the parent-child relationship due to a consistent pattern of specific abuse that renders Father unable to care appropriately for the ongoing, physical, mental, or emotional needs of the Children.[6]

Following a trial, the trial court entered its judgments ("Judgments") terminating Father's parental rights to the Children and ordering that the custody and placement of the Children remain as previously ordered in the juvenile cases. The Judgments stated that the trial court had jurisdiction pursuant to section 211.452 because the trial court had "prior and continuing jurisdiction over the Children as set forth in Jackson County Juvenile Court case numbers 0916-JU000992, 0916-JU000995, and 0916-JU000996." The trial court found that the evidence established beyond a reasonable doubt[7] that there were grounds for terminating Father's parental rights to Children pursuant to sections 211.447.5(2), (3) and (6), and that termination of Father's parental rights was in the Children's best interest.

Father appeals.

**Analysis**

Father raises a single point on appeal. He does not challenge the trial court's findings that grounds exist to terminate his parental rights pursuant to sections

---

[5]Section 211.447.5(3).
[6]Section 211.447.5(6).
[7]Ordinarily, the burden of proof in a termination of parental rights case is clear, cogent, and convincing evidence. Section 211.447.6. However, the Children are Indian Children as defined by the Indian Children Welfare Act, 25 U.S.C. section 1901 *et seq.*, so that the burden of proof is a termination of parental rights case is beyond a reasonable doubt. 25 U.S.C. section 1912(f).

4

211.447.5(2), (3), or (6). And Father does not challenge the trial court's determination that termination of his parental rights was in the best interest of the Children. Instead, Father challenges the trial court's finding that it had jurisdiction to hear the termination of parental rights proceedings pursuant to section 211.452 because the trial court had "prior and continuing jurisdiction over the Children as set forth in Jackson County Juvenile Court case numbers 0916-JU000992, 0916-JU000995, and 0916-JU000996." Specifically, Father argues that the trial court's assumption of jurisdiction over the Children on August 17, 2011, was not lawful because it was based upon a stealing charge that was later dismissed, and as to which Father was not found guilty. "Because the question here is one of jurisdiction, it is an issue of law, and our review is *de novo*." *Gosserand v. Gosserand*, 230 S.W.3d 628, 631 (Mo. App. W.D. 2007).

Father's notices of appeal were filed in his termination of parental rights proceedings, case numbers 1516-JU000541, 1516-JU000542, and 1516-JU000543, and purport to challenge the Judgments entered in those proceedings. The only finding in those Judgments about which Father complains is the finding in paragraph 2 that the trial court has "jurisdiction over [the termination of parental rights proceedings] pursuant to section 211.452." That section provides, in pertinent part, that "[t]he petition for termination of parental rights shall be filed in the juvenile court which has prior jurisdiction over the child." Section 211.452.1. Father does not contest that, in fact, his termination of parental rights proceedings were filed in the juvenile court which had prior jurisdiction over the Children. As a matter of law, the Judgments properly found that the trial court had the

5

statutory authority to entertain Father's termination of parental rights proceedings pursuant to section 211.452.

Father's complaint on appeal centers on whether the trial court properly assumed jurisdiction over the Children on August 17, 2011.[8] The trial court's August 17, 2011 order was not entered in Father's termination of parental rights proceedings, but was instead entered in the underlying juvenile cases. The trial court's exercise of authority over the Children in the underlying juvenile cases on August 17, 2011, and its resulting judgment of April 12, 2012, awarding custody of the Children to the Children's Division, were not appealed by Father.[9] Father is attempting to collaterally attack the August 17, 2011 order in these termination of parental rights proceedings.

"'Where a judgment is attacked in other ways than by proceedings in the original action to have it vacated or reversed or modified or by a proceeding in equity to prevent its enforcement, the attack is a collateral attack.'" *Reimer v. Hayes*, 365 S.W.3d 280, 283 (Mo. App. W.D. 2012) (quoting *Barry, Inc. v. Falk,* 217 S.W.3d 317, 320 (Mo. W.D. App.

---

[8]We question Father's characterization of the August 17, 2011 order, as the Children were already subject to the juvenile court's jurisdiction on that date, though in Father's custody subject to the Children's Division's supervision. Father has not included a copy of the August 17, 2011 order or judgment that he asserts was improper in the record on appeal. As the appellant, it was Father's responsibility to supply us with the record on appeal, which should contain "'all of the record, proceedings, and evidence necessary to the determination of all questions to be presented, by either appellant or respondent.'" *Developers Sur. & Idem. Co. v. Woods of Somerset, LLC*, 455 S.W.3d 487, 493 (Mo. App. W.D. 2015) (quoting Rule 81.12(a)). "Where necessary materials are omitted from the record on appeal, the appellate court will assume that the omitted items were unfavorable to the appellant and favorable to the respondent." *Id.*

The Department of Social Services filed a supplemental legal file that includes an order of protective custody entered in all three juvenile cases on August 17, 2011, which ordered the Children *to remain* in the protective custody of the Children's Division. It appears the effect of the August 17, 2011 order was simply to modify the Children's custodial placement, and not to assume jurisdiction over the Children, as that jurisdiction had been assumed many months earlier.

[9]Father could have appealed the judgments entered in the underlying juvenile proceedings pursuant to section 211.261.1. That statute provides that "[a]n appeal shall be allowed to a parent from any final judgment, order or decree under the provisions of this chapter which adversely affects him." Section 211.261.1.

6

2007)).  Generally, a judgment must be challenged via direct appeal and not by a collateral attack.  *Id.*  If a judgment was rendered by a court having both subject-matter jurisdiction and personal jurisdiction, the judgment is not open to a collateral attack as to the judgment's validity or the conclusiveness of the matters adjudicated therein.  *Id.*  However, if a judgment was made without subject-matter jurisdiction or personal jurisdiction, the judgment would be void so that a collateral attack would be permissible.  *Blanchette v. Blanchette*, 476 S.W.3d 273, 278 (Mo. banc 2015).

Subject-matter jurisdiction refers to "the court's authority to render a judgment in a particular category of case."  *J.C.W. ex rel. Webb v. Wyciskalla*, 275 S.W.3d 249, 253 (Mo. banc 2009).  "Article V, section 14 [of the Missouri Constitution] sets forth the subject matter jurisdiction of Missouri's circuit courts in plenary terms, providing that '[t]he circuit courts shall have original jurisdiction over *all* cases and matters, civil and criminal.'"  *Id.*  A juvenile case falls within the purview of "all cases and matters, civil and criminal."  Here, the underlying juvenile cases were heard by the Jackson County Juvenile Court, which is "the juvenile division or divisions of the circuit court of the county."  Section 211.021.1(3).

Personal jurisdiction "refers quite simply to the power of a court to require a person to respond to a legal proceeding that may affect the person's rights or interests."  *Webb*, 275 S.W.3d at 253.  State courts have always had power to exercise jurisdiction over persons living in the state.  *Id.*  Father does not assert that neither he nor the Children lived in another state at the time of the August 17, 2011 action taken by the trial court.

Father's current complaint that the trial court had no factual basis sufficient to support assuming jurisdiction over the Children on August 17, 2011 order does not

implicate either subject-matter jurisdiction or personal jurisdiction. Father cannot collaterally attack the August 17, 2011 order entered in the underlying juvenile proceedings in these termination of parental rights proceedings. *See In re O.J.B.*, 436 S.W.3d 726, 730-31 (Mo. App. W.D. 2014) (holding that parents may not challenge to the trial court's assumption of jurisdiction over a child in an appeal from a judgment arising from a permanency planning hearing because the challenge amounted to a collateral attack).

Because Father's point on appeal constitutes an impermissible collateral attack on the judgments in juvenile case numbers 0916-JU000992, 0916-JU000995, and 0916-JU000996, it is denied.[10]

## Conclusion

The trial court's Judgments terminating Father's parental rights with respect to the Children are affirmed.

_____
Cynthia L. Martin, Judge

All concur

---

[10]Even if we were able to reach the merits of Father's appeal, it would fail for several reasons. First, Father's brief neither cites relevant authority nor explains why such authority is not available to support his point on appeal, rendering his point abandoned so that dismissal of the appeal would be appropriate. *See Kim v. Shelton*, 485 S.W.3d 377, 379 (Mo. App. W.D. 2016). Second, the termination of parental rights judgments indicate that the Children were adjudicated to have been abused or neglected on September 15, 2009, so that the Children were placed in the trial court's jurisdiction on that date. The record reflects that the Children remained in either the custody of, or under the supervision of, the Children's Division continuously thereafter, rendering the August 17, 2011 order suspect in its effect other than to change temporary custody of the Children. Third, even if the Children were not subject to the trial court's continuously between September 15, 2009, and August 17, 2011, and the August 17, 2011 order could be properly viewed as having assumed jurisdiction over the Children anew, Father cites no authority for the proposition that a juvenile court cannot consider the factually underpinning of a charged crime unless the charge results in a conviction.

8